IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RICKY MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:14-CV-905-WKW |
| | ) | [WO] |
| RANDALL V. HOUSTON, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on the Order to Show Cause (Doc. # 38), which addressed the issue of the court's subject-matter jurisdiction over Plaintiff's Religious Land Use and Institutionalized Persons Act ("RLUIPA") claim. Plaintiff filed a response to the show cause order (Doc. # 40). Defendant then filed a reply (Doc. # 41), which is construed as containing a renewed motion to dismiss Plaintiff's RLUIPA claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Upon careful consideration, the court has subject-matter jurisdiction over Plaintiff's RLUIPA claim, and the renewed motion to dismiss is due to be denied.

## I. JURISDICTION AND VENUE

At issue is whether the court has subject-matter jurisdiction over Plaintiff's RLUIPA claim. *See* 42 U.S.C. § 2000cc *et seq.* The parties do not contest personal jurisdiction or venue.

## II. STANDARDS OF REVIEW

Federal courts are courts of limited jurisdiction. They must only exercise jurisdiction in cases within their authority as defined by Article III of the Constitution and the relevant Congressional mandates. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999). Before taking action in a case, the court must first determine that it has subject-matter jurisdiction over all the claims raised therein. *See id.* at 410 (recognizing the court's duty to raise the issue of subject-matter jurisdiction *sua sponte* wherever it may be lacking). Where the issue of the court's subject-matter jurisdiction is raised in connection with a motion to dismiss, the relevant inquiry is whether the complaint sufficiently alleges a factual basis of subject-matter jurisdiction. *Cf. Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013).

To exercise subject-matter jurisdiction over an RLUIPA claim, the court must satisfy itself that one of three prerequisites is met: (1) the land use regulation causing the alleged substantial burden on the exercise of religion is part of a plan or activity that receives federal funding; (2) the substantial burden on religious exercise affects interstate commerce; or (3) the substantial burden arises from the state or local government's procedures for making individualized assessments of proposed property use. 42 U.S.C. § 2000cc(a)(2); *Midrash Shepardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1225 (11th Cir. 2004).

2

When evaluating a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## III.  BACKGROUND

This action comprises statutory and constitutional challenges to an act of the Alabama legislature. The relevant facts and procedural history were addressed in detail in the Memorandum Opinion and Order denying Defendant's previous motion to dismiss. (Doc. # 37.) For the sake of convenience, they will be briefly discussed below.

### A.  <u>Facts</u>

Plaintiff Ricky Martin ("Martin") is the pastor of Triumph Church in Clanton, Alabama. For several years, Martin carried on a Christian ministry through which he offered transitional housing to registered sex offenders who were recently

released from incarceration.  He housed these men in mobile homes, which he placed on a parcel of property adjacent to Triumph Church.  The ministry carried on for several years until the state passed a law disrupting its operation.

The statutory measure at issue, which originated as House Bill 556, and is codified at Alabama Code § 45-11-82 (the "Act"), provides that multiple unrelated adult sex offenders may not establish residency in the same home.  It also provides that an adult sex offender may not establish a residence on the same lot or property as another adult sex offender unless the homes are at least 300 feet apart.  Any violation of these provisions constitutes a public nuisance and is punishable by fine. The Act empowers the Chilton County District Attorney, Defendant Randall V. Houston ("Houston"), to bring civil enforcement actions against owners or lessors of non-compliant properties.

Martin alleges that the Act only applies to his property.  All of the mobile homes on his property were within 300 feet of each other, and all of the men living in his settlement were adult sex offenders.  By its terms, the Act only reaches property within the confines of Chilton County, Alabama.  Ala. Code § 45-11-82(a). Martin alleges that the bill's sponsors supported its passage with the intent of forcing him to dismantle his ministry.  In his Answer, Houston admits that Martin is the only person on whom he served a notice of enforcement of the Act.  (Doc. # 39, at 3.)

Upon receiving notice that his property constituted a public nuisance under the Act, Martin discontinued his settlement ministry.  He evicted all settlement residents to avoid being fined under the Act's civil enforcement provision and has not since taken in any residents.  If not for Houston's threat to bring an enforcement action against him, Martin would have continued operating his settlement ministry. He brought this action seeking declaratory and injunctive relief.

**B.**   **Procedural History**

In the operative amended complaint (Doc. # 22), Martin raises four claims: (1) that the Act violates RLUIPA; (2) that the Act infringes upon his First Amendment rights; (3) that the Act constitutes an unlawful bill of attainder; and (4) that the Act violates his rights to procedural due process.  Houston initially responded to the Amended Complaint with a motion to dismiss (Doc. # 25).

That motion was denied in its entirety, but with the caveat that Martin must show cause why his RLUIPA claim should not be dismissed for lack of subject-matter jurisdiction (Docs. # 37 and 38).  Martin filed a response to the order to show cause (Doc. # 40), and Houston filed a reply (Doc. # 41).  In his reply, Houston reanimates his argument that Martin's RLUIPA claim should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The reply is thus construed as containing a renewed motion to dismiss, which will be addressed in conjunction with the issue of RLUIPA jurisdiction.

## IV.  DISCUSSION

In his First Cause of Action, Martin alleges that the Act constitutes a land use regulation that imposes a substantial burden on his free exercise of religion in violation of RLUIPA.   42 U.S.C. § 2000cc(a)(1).   RLUIPA's jurisdictional prerequisites will first be generally discussed.   Those principles will be applied to determine whether the court has subject-matter jurisdiction over Martin's RLUIPA claim.   The issues raised in Houston's renewed motion to dismiss will then be addressed.

### A.      RLUIPA's Jurisdictional Prerequisites

Congress enacted RLUIPA with the intention of ensuring broad religious protections.   *Holt v. Hobbs*, 135 S. Ct. 853, 859 (2015).   RLUIPA provides, in relevant part,[1] that "no government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person." 42 U.S.C. § 2000cc(a)(1).   If the land use regulation does impose a substantial burden on religious exercise, the government must demonstrate that the regulation furthers a compelling governmental interest and is the least restrictive means of doing so.   *Id.*

---

[1] RLUIPA also reaches governmental action that imposes a substantial burden on the religious exercise of persons institutionalized in government facilities.  42 U.S.C. § 2000cc-1; *see* 42 U.S.C. § 1997 (defining "institution").   Martin's claim relies only on RLUIPA's land use provision, 42 U.S.C. § 2000cc.

RLUIPA's land use regulation provision only applies, however, where one of three jurisdictional prerequisites is met.  Martin relies solely on the "individualized assessments" prerequisite, arguing that the substantial burden on his free exercise of religion arises from the government's procedures for making individualized assessments of proposed property use.  *See* 42 U.S.C. § 2000cc(a)(2)(C).  Because these prerequisites have been characterized as jurisdictional, *Midrash Shepardi*, 366 F.3d at 1225, the court must first satisfy itself that the circumstances at bar fit this statutory paradigm.

The Memorandum Opinion and Order (Doc. # 37) denying Houston's motion to dismiss raised *sua sponte* the issue of RLUIPA jurisdiction.  It questioned whether the allegations in the amended complaint were sufficient to state a basis of subject-matter jurisdiction in light of the fact that the Act involves no system of granting permits or variances for specific types of property use.  Because the Act determined conclusively that the existing settlement on Martin's property constituted a public nuisance, it was unclear whether the substantial burden at issue arose from the government's implementation of a land use regulation under which the government makes individualized assessments of the proposed use of property.  *See* § 2000cc(a)(2)(C).

The parties' supplemental briefing on this issue has clarified the nature of Martin's allegations with respect to his RLUIPA claim.  Upon consideration of these

new arguments, the allegations in the amended complaint are sufficient to support the finding that the court has subject-matter jurisdiction over Martin's RLUIPA claim.  This finding will be addressed in detail below.

## B.   **Whether the Court Has Subject-Matter Jurisdiction over Martin's RLUIPA Claim**

As noted above, in support of his argument that the court has subject-matter jurisdiction over his RLUIPA claim, Martin relies solely on the individualized assessments prerequisite.  Under that prerequisite, RLUIPA applies, and the court has subject-matter jurisdiction over the relevant claim, where

> the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved.

§ 2000cc(a)(2)(C).  *See Midrash Shepardi*, 366 F.3d at 1225.  This provision can be parsed into three individual elements.  To adequately plead a basis of subject-matter jurisdiction, the allegations in the amended complaint must be sufficient to plausibly support the findings (1) that the Act constitutes a land use regulation, (2) that the Act is a regulation under which the government makes individualized assessments, and (3) that the Act permits the government to assess the proposed use of property.  *See* § 2000cc(a)(2)(C).  These elements will be addressed in turn.

8

1.     *Whether the Act Constitutes a Land Use Regulation*

The allegations in the amended complaint must first support the finding that the Act constitutes a land use regulation.  RLUIPA defines "land use regulation" as "a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land."  42 U.S.C. § 2000cc-5(5).  Martin adequately alleges that he owns the property at issue and that the Act restricts his use or development of that land.  Whether the Act constitutes a land use regulation within the meaning of RLUIPA turns on whether the Act qualifies as a zoning or landmarking law.

Martin's allegations do not suggest that the Act qualifies as a landmarking law.  Such laws, as their name suggests, generally relate to measures that restrict land use for the purpose of protecting buildings, sites, works of art, or other objects that have special historic, aesthetic, or other value.  *See Congregation Adas Yereim v. City of New York*, 673 F. Supp. 2d 94, 105 (E.D.N.Y. 2009).  The amended complaint includes no allegations supporting the finding that the Act is designed to protect landmarks of this sort.

Martin's allegations are sufficient, however, to support the finding that the Act qualifies as a zoning law.   It first bears noting that the precise definition of "zoning" is difficult to delineate.  *Fortress Bible Church v. Feiner*, 694 F.3d 208, 216 (2d Cir. 2012).  In general terms, zoning refers to the "legislative division of a

region, esp[ecially] a municipality, into separate districts with different regulations within the districts for land use, building size, and the like." *Zoning*, BLACK'S LAW DICTIONARY (10th ed. 2014); *cf.* Ala. Code § 11-52-70 (authorizing municipal corporations within Alabama to divide territory for different uses).

The Act makes territorial divisions in the same way.  It divides the state of Alabama into two districts:  one where adult sex offenders may not live within 300 feet of each other, and one where they may.  The former includes the entirety of Chilton County, and the latter comprises all other counties within the state.  Rather than imposing *in personam* restrictions on adult sex offenders themselves, the legislature opted to limit the acceptable uses of property within the Chilton County zone.   In this sense, for purposes of applying the individualized assessments prerequisite, the Act qualifies as a zoning law, and thus constitutes a land use regulation.  The allegations in the amended complaint are sufficient to support this element of the individualized assessments inquiry.

Houston urges the court to find otherwise by operation of certain canons of statutory construction.  He mentions first that courts should narrowly read statutes "purporting to preempt traditional state prerogatives:  'if Congress intends to alter the usual constitutional balance between the States and Federal Government, it must make its intention to do so unmistakably clear in the language of the statute.'"  (Doc. # 26, at 39; Doc. # 41, at 5–6 (quoting *Will v. Mich. Dep't of State Police*, 491 U.S.

10

58, 65 (1989)).)  Beyond offering this quotation from *Will*, Houston makes no effort to explain how this principle of statutory construction applies to the circumstances at bar.   He fails to explicate, for example, how RLUIPA alters the usual constitutional balance between states and the federal government.   Nor does he elaborate on the way in which a narrower reading of the individualized assessment provision would avoid preemption of a traditional state prerogative.  To the extent that RLUIPA upsets the ability of the states to enforce their own zoning regulations, the text of the statute makes Congress's intent to do so unmistakably clear.

In similarly cursory fashion, Houston makes reference to the principle that courts should construe statutes so as to avoid constitutional questions.  Aside from noting that Congress passed RLUIPA in the wake of constitutional challenges to the Religious Freedom Restoration Act, Houston fails to explain which particular constitutional question the court should avoid in this instance.  (*See* Doc. # 26, at 39 (citing *City of Boerne v. Flores*, 521 U.S. 507, 532 (1997)); Doc. # 41, at 5 (citing *Edward J. Bartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988)).)  He briefly mentions concerns about Congressional authority to enact legislation under the Fourteenth Amendment, but fails to identify the way that this question arises in the context of Martin's RLUIPA claim.  The court cannot divine his meaning from isolated reference to these canons and their supporting case

law.  Without meaningful argument, these principles cannot overcome the finding that the Act qualifies as a zoning law within the traditional meaning of that phrase.

Houston also argues that RLUIPA's legislative history counsels in favor of a narrower reading of the phrase "land use regulation."  It is true, as Houston notes, that Congress chose to enact a version of RLUIPA that only applies to zoning or landmarking laws as opposed to a version that would have applied to all laws or decisions restricting land use.  But the Act fits squarely within the general definition of "zoning law," and thus falls within the category of laws intended to be subject to RLUIPA's land use provision.

To the extent Houston references statements added to the Congressional record associated with RLUIPA's passage, those statements have no bearing on the application of RLUIPA to the Act.  The particular statement to which Houston refers, which came from Senator Dewine of Massachusetts, expressed concern with the ability of municipalities to enforce building codes, fire codes, and other health and safety codes without running afoul of RLUIPA.  *See* 146 Cong. Rec. S10992-01 (daily ed. Oct. 25, 2000).  The Act, however, is not akin to a building or fire code intended to prevent hazardous conditions inside of buildings.  Instead of ensuring that the structures themselves are safely maintained, the Act regulates which persons are allowed to occupy certain structures within Chilton County.

With respect to Houston's argument that treating the Act as a land use regulation is inconsistent with the history of RLUIPA's land-use provision, he again fails to explain how this history comes to bear in the context of the Act and Martin's settlement. Houston merely provided copies of cases outlining that history, offering no explanation as to how it should inform the resolution of the issues now before the court. To the extent that RLUIPA's history confirms that Congress intended that it apply only to land use and the activities of institutionalized persons, that history is unremarkable. This is because the allegations in the amended complaint are sufficient to support the finding that the Act qualifies as a land use regulation and thus fits within the limited parameters under which RLUIPA applies. Because the allegations support the reasonable inference that the Act divides the state of Alabama into territories and prescribes permissible uses of land within those territories, Martin has adequately pleaded that the Act is a land use regulation.

2.     *Whether the Act is a Land Use Regulation Under Which the Government Makes Individualized Assessments*

The allegations in the amended complaint must also plausibly support the finding that the Act is a land use regulation under which the government makes individualized assessments of the use of land. Martin's allegations suggest that the government made two individualized assessments relating to the Act. First, the allegations suggest that the Alabama legislature designed the Act after making an

13

individualized assessment of the way that Martin was using his property.  Second, the allegations suggest that Houston, implementing the Act's terms, individually assessed Martin's property use and determined that it constituted a public nuisance. These allegations are sufficient to plausibly support the finding that the Act is a land use regulation under which the government makes individualized assessments regarding the use of land.

One potential individualized assessment of Martin's property use occurred when the Alabama legislature passed the Act.  Martin alleges that the Act applies to no property other than his, and Houston admitted that Martin is the only person on whom he served a notice of enforcement of the Act.  Martin further alleges that Alabama House Representative Kurt Wallace ("Wallace") and the Chilton County District Attorney's office explained to news media outlets that their purpose in supporting the bill was specifically to force Martin to disband his settlement.  These allegations are sufficient to support the inference that the Act's passage involved an individualized assessment of Martin's property use.

Houston is correct to note, however, that RLUIPA requires something more than a mere legislative assessment of an individual's property use.  RLUIPA is designed to reach the *implementation* of a land use regulation in a manner that burdens the exercise of religion.  § 2000cc(a)(1).  And the individualized assessment prerequisite is only satisfied where the burden is imposed in the implementation of

14

a land use regulation *under which* the government makes individualized assessments of the proposed use of property. § 2000cc(a)(2)(C). As noted in Part IV.B.1, *supra*, the allegations are sufficient to support the finding that the Act is a land use regulation. But the legislature's action in passing this land use regulation is not the same as implementing it. Martin must sufficiently allege that the Act is a regulation under which the state makes, by implementing the terms of the Act after its passage, individualized assessments of the proposed use of property.

Because Martin alleged that Houston applied the Act, after its passage, to prevent him from maintaining his settlement operations in the future, the amended complaint is sufficient to satisfy this element of the individualized assessments prerequisite. After the Act's passage, and just before its effective date, Houston warned Martin that his settlement arrangement would constitute a public nuisance under the Act. He later ordered Martin to evict all settlement residents or face enforcement action, which would include a fine. In taking these actions, Houston had to apply the terms of the Act to the settlement as it existed on Martin's property.

That is, Houston had to confirm that Martin's property was located within the confines of Chilton County, that the residents living in the settlement were adult sex offenders, and that the mobile homes on the property were located within 300 feet of each other. Houston also had to determine, as a matter of prosecutorial discretion, whether expending his resources on the enforcement of the Act as against Martin's

15

property was a game worth the candle. Whether it was a formal or informal assessment is immaterial—the individualized assessments prerequisite contemplates both. § 2000cc(a)(2)(C). If the legislature truly designed the Act with the intention of forcing Martin to dismantle his settlement, this determination likely was not difficult for Houston to make. But it was an individual assessment nonetheless.

Anticipating this line of reasoning, Houston contends that he did not make an individualized assessment of the use of Martin's property under the Act because the Act conclusively determines that living arrangements violating the 300-foot rule constitute a public nuisance. The Act does provide, in no uncertain terms, that any property arrangement in which adult sex offenders live within 300 feet of each other constitutes a public nuisance. Ala. Code § 45-11-82(c). The court found as much in denying Houston's initial motion to dismiss, noting that Martin's as-applied challenges to the Act were ripe for judicial review. (Doc. # 37, at 15.)

This finding responded directly to Houston's ripeness arguments, rebutting his contention that Martin might have been allowed to argue, in enforcement proceedings, that his settlement in fact does not constitute a public nuisance. Under the unmistakable language of the Act, the arrangement existing at Martin's property did constitute a public nuisance. To suggest that Martin could appear in court to successfully argue otherwise is a fanciful suggestion of a futile argument.

But the fact that the Act allows no room for argument as to what constitutes a public nuisance does not mean that Houston did not make an individualized assessment of Martin's property use thereunder. Houston still had to assess, in an individualized fashion, whether the circumstances warranted enforcement action. After assessing the settlement as it existed on Martin's property, Houston decided that the arrangement ran afoul of the 300-foot rule and that it was appropriate to serve Martin with an enforcement notice. This is sufficient, at least for purposes of determining whether the amended complaint sufficiently alleges a basis of subject-matter jurisdiction, to support the finding that the Act is a land use regulation under which the government makes individualized assessments of property use.

### 3. *Whether the Assessment Was of a Proposed Use of Property*

The allegations in the amended complaint thirdly must support the finding that the Act allowed Houston to make an individualized assessment of the proposed use of Martin's property. Upon consideration of Martin's response to the show cause order, it is clear that the allegations are adequate to support this element of the individualized assessments prerequisite.

In the amended complaint, Martin alleges that he would have continued housing adult sex offenders on his property if not for Houston's threat to bring an enforcement action under the Act. Martin signaled his intention to continue using his property for the settlement when he wrote to Wallace and urged him not to

support the Act's passage.  The nature of Houston's enforcement notice made it clear that he understood that Martin intended to continue his settlement ministry for an indefinite future period.  Houston ordered Martin to evict the settlement residents and warned Martin that his continuation of the settlement after the Act's effective date would result in substantial fines.  Houston thus made an individualized assessment of Martin's intended future use of the property.

In light of the foregoing, the court has subject-matter jurisdiction over Martin's RLUIPA claim.  Examining the amended complaint in light of the individualized assessments prerequisite, it is clear that Martin's allegations support the finding that the burden on his religious exercise resulted from the implementation of a land use regulation under which the government made an individualized assessment of his proposed use of property.  *See* § 2000cc(a)(2)(C).  Because the amended complaint adequately pleads this basis of subject-matter jurisdiction, the discussion now turns to the substance of Houston's renewed motion to dismiss.

## C.    Whether Martin Adequately Pleaded an RLUIPA Claim

In his reply to Martin's response to the show cause order, Houston again argues that Martin's RLUIPA claim should be dismissed for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  He contends, in support of this renewed motion, that the Act is not a land use regulation within the

meaning of RLUIPA and that the Act does not impose a substantial burden on Martin's free exercise of religion.[2]  These grounds will be addressed in that order.

First, based on the analysis in Part IV.B.1, *supra*, the allegations are sufficient to support the finding that the Act constitutes a land use regulation.  Because it divides the state of Alabama into districts and prescribes permissible uses of land within those districts, it fits the conventional definition of "zoning law." Accordingly, to the extent that Houston argues that the Act is not a land use regulation, his renewed motion to dismiss is due to be denied.

Second, Martin's allegations are sufficient to support the finding that the Act imposes a substantial burden on Martin's free exercise of religion.  Under RLUIPA, a government action imposes a substantial burden on the free exercise of religion where it places "significant pressure" on the exercise of religion such that it "directly coerces the religious adherent to conform his or her behavior accordingly." *Midrash Shepardi*, 366 F.3d at 1227.  The Act, as alleged in the amended complaint, applied sufficient pressure on Martin such that it coerced him to cease his settlement ministry, which he maintained in furtherance of his religious beliefs.

Houston argues, in support of his renewed motion to dismiss, that the Act does not impose a substantial burden because Martin is free to establish a settlement

---

[2] Houston acknowledged, in his briefing on the original motion to dismiss, that these are the only grounds on which he seeks dismissal.  (Doc. # 34, at 14.)

ministry on any property located outside of Chilton County.  As with Houston's effort to dismiss Martin's First Amendment claim, this "anywhere but here" possibility is insufficient to warrant dismissal of Martin's RLUIPA claim.  At this stage of the litigation, there has been no discovery with respect to Martin's ability to establish a settlement ministry outside of Chilton County.  It thus cannot be said that Martin could re-establish his settlement elsewhere without having to overcome substantial personal or financial burdens.

The allegations, which are taken as true and construed in the light most favorable to Martin, indicate that Martin carries out his ministry in furtherance of his Christian beliefs, and that the Act effectively forced him to cease this ministry. If not for Houston's threat to bring an enforcement action against him, Martin would have continued to carry out what he believes is his religious duty by providing a Christian housing environment to adult sex offenders.  These allegations are sufficient to plausibly allege that the Act imposes a substantial burden on Martin's exercise of religion within the meaning of RLUIPA.  *See Iqbal*, 556 U.S. at 678. Accordingly, to the extent Houston argues that the Act does not impose a substantial burden, his renewed motion will be denied.

## V.  CONCLUSION

In light of the foregoing, the court has subject-matter jurisdiction over Plaintiff's RLUIPA claim pursuant to 42 U.S.C. § 2000cc and 28 U.S.C. § 1331.

(*See* Am. Compl., Doc. # 22, at 13–14.)  It is ORDERED that Defendant's renewed motion to dismiss Plaintiff's RLUIPA claim (Doc. # 41) is DENIED.

DONE this 25th day of July, 2016.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE